IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 11–cv–01114–KMT–BNB

TRACY L. HIGHTOWER-HENNE, and
THOMAS HENNE,

    Plaintiffs,

v.

LEONARD M. GELMAN,

    Defendant.

---

# ORDER

---

This matter is before the court on Defendant Leonard M. Gelman's Motion for Summary Judgment [Doc. No. 17] ("Mot.") filed August 12, 2011. Plaintiffs, Tracy Hightower-Henne and Thomas Henne (collectively "the Hennes"), responded on September 14, 2011 [Doc. No. 23] ("Resp.") and the defendant filed a Reply on October 3, 2011 [Doc. No. 25]. Also considered is Plaintiffs' "Motion to File Sur-Reply" [Doc. No. 26], which is denied.[1]

---

[1] Neither the Federal Rules of Civil Procedure nor the Local Rules of Practice in the District of Colorado provide for the filing of a surreply. Additionally, the court's review of the proposed surreply reveals it is nothing more than an attempted unauthorized additional bite at the proverbial apple and adds nothing of merit to the summary judgment analysis.

*Background*

On February 8, 2010, Nebraska residents Tracy L. Hightower-Henne and her husband Thomas Henne joined a small group of friends and family for a snowmobile ride in Vail, Colorado. Mrs. Hightower-Henne, a Nebraska attorney, rented two snowmobiles from Colorado Backcountry Rentals ("CBR") for herself and her husband, signing the rental agreement for the two machines and declining the offered insurance to cover loss or damage to the machines while in their possession. (Mot., Ex. H, Judgment Order of County Court Judge Wayne Patton, April 21, 2011, hereinafter "Judgment Order" at 1.)[2] While at the CBR's office, the Hennes were shown a video depicting proper operation of snowmobiles in general and were also verbally advised on snowmobile use by an employee of CBR. (*Id.*) Plaintiffs, a short while thereafter, met another employee of CBR, Mr. Weber, at Vail Pass and were given possession of the snowmobiles after an opportunity to inspect the machines. (*Id.* at 2.) Plaintiffs utilized their entire allotted time on the snowmobiles and brought them back to Mr. Weber as planned. Mr. Weber immediately noticed that the snowmobile ridden by Mr. Henne was missing its air box cover and faring, described as a large blue shield on the front of the snowmobile, entirely visible

---

[2] As will be discussed in more detail herein, one of the rented snowmobiles suffered damage while in the possession of Mr. Henne. Although agreeing to pay for the damage initially, Mr. Henne later disputed the charges levied by CBR against his credit card, resulting in a collection lawsuit brought by CBR against Mr. and Mrs. Henne in Summit County Court, Case Number 10 C 255 ). (*See* Mot., Ex. G; hereinafter, the "Summit County case.") This court takes the underlying facts from the Judgment Order of Hon. Wayne Patton in the Summit County Case as Judge Patton presided over a trial and therefore had the best opportunity to assess the witnesses, including their credibility and analyze the exhibits. The defendant in this case, Leonard M. Gelman, was the attorney for CBR in the Summit County case.

to any driver. (*Id.* at 3.) At the he returned the snowmobile, Mr. Henne told Mr. Weber that the parts had fallen off approximately two hours into the ride and that he had tried to carry the faring back, but, as he was unable to do so, he left the part on the trail.[3] (*Id.* at 2.) Mr. Henne signed a form acknowledging the missing part(s) and produced his driver's license and a credit card with full intent that charges to fix the snowmobile would be levied against that card. Mr. Henne signed a blank credit card slip, which the parties all understood would be filled-in once the damage could be definitively ascertained.[4] (*Id.*) Although CBR, pursuant to the rental agreement signed by Mrs. Hightower-Henne, was entitled to charge the Hennes for loss of rentals for the snowmobile while it was being repaired, CBR waived that fee[5] and charged Mr. Henne oa total of only $220.11. (Mot., Ex. B.)

Upon their return to Nebraska, however, Mr. and Mrs. Henne apparently decided they did not want to pay for the damage to the snowmobile, even with the waiver of the rental loss, and contested the charge to Mr. Henne's credit card resulting in a reversal of the charge by the credit

---

[3] This story changed at trial in the Summit County case, where Mr. Henne reported that the parts fell off the machine about 5-10 minutes into the ride. Mr. Henne also testified that he did not know he was missing a part - he claimed a group of strangers told him that his snowmobile was missing a part and he thereafter retraced his route to try to find the piece but could not find it. Judge Patton found that "Mr. Henne's testimony does not make sense to the court." (Judgment Order at 3.) The court found that the evidence indicated the parts came off during the ride and that since the clips that held the part on were broken and the "intake silencer" was cracked, Judge Patton indicated, "The court does not believe that the fairing just fell off." (*Id.*)

[4] Mr. Henne's proffered credit card was for a different account that Mrs. Hightower-Henne had used to rent the snowmobiles.

[5] CBR's notation on the Estimated Damages form states, "Will not charge customer for the 2 days loss rents as good will." (Mot., Ex. B.)

card issuer. Further, the Hennes leveled criminal forgery accusations against CBR's employee with the Frisco, Colorado Police Department (*id.* at 4), alleging that the acknowledgment of damage form and the credit card slip were not signed by Mr. Henne. The police department investigated, but no charges were filed.

Mr. Henne's ultimate cancellation of his former acquiescence to payment caused CBR to contact their corporate lawyer, Defendant Gelman, and ask that he attempt to obtain payment from the Hennes, authorizing a law suit if initial requests for payment failed. Obviously, CBR was no longer willing to waive the fee for loss of rental which was part of the contract Mrs. Hightower-Henne signed. (*Id*. at 2.)

At trial in the Summit County case, Mr. and Mrs. Henne maintained that Mr. Henne's signature on the damage estimate and the credit card slip were forgeries. (*Id.* at 4.) The court found that Mr. Weber, CBR's employee who witnessed Mr. Henne sign the documents, was a credible witness and found Mr. Henne's claim that he had not signed the documents was not credible. (*Id.*) The court also found that there was no incentive whatsoever for anyone to have forged Mr. Henne's signature on anything since "[CBR] already had Ms. Hightower-Henne's credit card information and authorization so even if Mr. Henne had refused to sign the disputed documents it had recourse without having to resort to subterfuge." (*Id.*)

After deciding in favor of CBR on the liability of Mr. and Mrs. Henne for the damage to the snowmobile in the total amount of $653.60, Judge Patton considered the issue of attorney's fees and costs incurred in that proceeding. Finding that the original rental documents signed by Mrs. Hightower-Henne contained a prevailing party award of attorney fees provision, the court

4

awarded CBR $25,052.50 in attorney's fees against Mrs. Hightower-Henne plus $1,737.92 in costs.[6] The court stated that even though the attorney fee award was substantial considering the amount of the original debt, the time expended by CBR's counsel was greatly exacerbated by Mrs. Hightower-Henne's "motions and threats" and that it was the Hennes who "created the need for [considerable] hours by their actions in filing baseless criminal complaints, filing motions to continue the trial and by seeking to have phone testimony of several witnesses who had no knowledge of what took place while Defendant's (sic) had possession of the snowmobiles." (Mot., Ex. I, June 22, 2011 Order of Hon. Wayne Patton, hereinafter "Atty. Fee Order" at 3.) The court also found that "although this was a case akin to a small claims case, Mrs. Hightower-Henne defended the case as if it were complex litigation."[7] (*Id.* at 1.) Judge Patton stated, with respect to the counterclaim filed by the Hennes, that "[a]lthough Mrs. Hightower-Henne did not pursue that claim at trial it shows the lengths she was willing to go to avoid payment of what was a fairly small claim." (*Id.* at 1.)

As a result of groundless criminal claims, baseless counterclaims, perjured testimony and over-zealous defense, instead of owing $220.11 for the snowmobile's missing part, after the dust settled on the Summit County case, the Hennes became responsible for a judgment in excess of $27,000.00.

---

[6] Costs were awarded against both Mr. and Mrs. Henne jointly and severally.

[7] In December 2010, the Hennes hired outside counsel to defend them in the county court action. (*Id.* at 4.)

In a prodigiously perfect example of throwing good money after bad, the Hennes now continue to prosecute this federal action against the lawyer representing CBR in the Summit County case, alleging violations of the federal Fair Debt Collection Practices Act ("FDCPA").[8] Unfortunately, even though the issue was raised at some point in the county court case, (*see id.* at 3, "Mrs. Hightower-Henne also made allegations that Plaintiff was violating fair debt collection laws"), these particular allegations were not resolved by the county court. Therefore, this court is now compelled to reluctantly follow the Hennes down this white rabbit's hole to resolve the federal case.

*Analysis*

*A.    Legal Standard*

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for

---

[8] This case was originally filed against CBR's lawyer by the Hennes in Summit County on March 31, 2011, suspiciously a mere one week before commencing trial on the underlying case before Judge Patton. Defendant Gelman removed the case to federal court post-trial on April 27, 2011, one week subsequent to Judge Patton's ruling against the Hennes. Between April 27, 2011 and August 12, 2011, the Hennes could have revisited the wisdom of continuing with this case had they been so inclined. However, the Hennes have not sought to even amend their Complaint in this matter, even though the findings call into question many of the arguments embodied in the federal complaint. (*See*, *e.g.*, Compl. ¶ 26.)

trial on a material matter." *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P. 56(c). A disputed fact is "material" if "under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Thomas v. Metropolitan Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (citing *Anderson*, 477 U.S. at 248).

When ruling on a motion for summary judgment, a court may consider only admissible evidence. *See Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1209-10 (10th Cir. 2010). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Concrete Works*, 36 F.3d at 1517. At the summary judgment stage of litigation, a plaintiff's version of the facts must find support in the record. *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Thomson*, 584 F.3d at 1312.

### B.      *Request for Additional Discovery*

As an initial matter, Plaintiffs request the court grant them further discovery in order to fully explore the matters raised by Defendant Gelman's affidavit, attached to the Motion. [Doc. No. 17-1, hereinafter "Gelman Affidavit."]

The party opposing summary judgment and who requests additional discovery must specify by affidavit the reasons why it cannot present facts essential to its opposition to a motion for summary judgment by demonstrating (1) the probable facts are not available, (2) why those facts cannot be presented currently, (3) what steps have been taken to obtain these facts, and (4) how additional time will enable the party to obtain those facts and rebut the motion for summary judgment. *Valley Forge Ins. Co. v. Healthcare Mgmt. Partners, Ltd.*, 616 F.3d 1086, 1096 (10th Cir. 2010)(internal quotations omitted); *Been v. O.K. Indust., Inc.*, 495 F.3d 1217, 1235 (10th Cir. 2007)(The protection under Rule 56(d) "arises only if the nonmoving party files an affidavit explaining why he or she cannot present facts to oppose the motion.")

As noted above, the instant motion and the Gelman Affidavit were filed on August 12, 2011. The discovery cut-off date in this case was not until October 3, 2011. (Scheduling Order, [Doc. No. 10] at 6.) Therefore, written discovery could have been timely served any time prior to August 31, 2011. When Defendant filed his motion and the affidavit, Plaintiffs still had **nineteen** days to compose and serve interrogatories and requests for production of documents in order to obtain substantiation – or lack thereof – of the matters contained in the Gelman Affidavit. Additionally, Plaintiffs had 49 days remaining within which to notice and schedule the deposition of Mr. Gelman, or any other person. Apparently, Plaintiffs did not avail

themselves of these opportunities, or, for that matter, any other attempt to obtain discovery during the entirety of the discovery period. There is no reason for the court to now accredit Plaintiffs' professed need for discovery at this late date when they did not undertake any discovery within the appropriate time frame even though the issues were then squarely before them. The request for further discovery is denied.

### C.     *Defendant Gelman's Status as Debt Collector*

The court has been presented with the following: the testimony through affidavit of Leonard M. Gelman; the testimony through affidavit of Tracy Hightower (Resp., Ex. 3 [Doc. No. 23-3] "Hightower Affidavit"); the Judgment Order and the Atty. Fee Order of Judge Wayne Patton referenced *infra*; the Complaint filed in the Summit County case – case number 10 C 255 (Mot., Ex. G); a letter from Lee Gelman to Thomas Henne dated April 1, 2010 (Mot., Ex. D; Resp., Ex. 1, "Demand Letter"); a letter to Lee Gelman from Tracy L. Hightower-Henne dated April 5, 2010 (Mot., Ex. E); an email exchange between Lee Gelman and Tracy Hightower dated April 13, 2010 (Resp., Ex. 4); an undated internet home page of Mountain Law Group (Mot., Ex. F); a document purporting to be a "Colorado Court Database" listing seven cases involving as plaintiff either Summit Interests Inc., Back Country Rentals, or Colorado Backcountry Rentals for the time period March 25, 2009 through November 18, 2010 (Resp., Ex. 7); three letters signed by "Lee Gelman, Esq." drafted on letterhead of a law firm named Dunn Keyes Gelman & Pummell with origination dates of March 10, 2008, March 19, 2009 and December 19, 2008 (Resp., Ex. 8); and, the snowmobile rental agreements and other documents relevant to the Summit County case (Mot., Exs. A - C).

The FDCPA regulates the practices of "debt collectors." *See* 15 U.S.C. § 1692(e). If a person or entity is not a debt collector, the Act does not provide any cause of action against them. Plaintiffs' Complaint alleges only violations of the FDCPA (*See* Compl. [Doc. No. 2]) by Defendant Gelman; therefore, if Defendant is not a debt collector, Plaintiffs' action must fail.

The FDCPA contains both a definition of "debt collector" and language describing certain categories of persons and entities excluded from the definition.[9] Thus, an alleged debt collector may escape liability either by failing to qualify as a "debt collector" under the initial definitional language, or by falling within one of the exclusions. The plaintiff in an FDCPA claim bears the burden of proving the defendant's debt collector status. See *Zimmerman v. The CIT Group, Inc.*, Case No. 08-cv-00246-ZLW-KMT, 2008 WL 5786438, at *9 (D. Colo. October 6, 2008) (citing *Goldstein v. Hutton, Ingram, Yuzek, Gainen, Caroll & Bertolotti*, 374 F.3d 56, 60 (2d. Cir.2004).

The Act defines "debt collector" as:

[A]ny person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6). See *Allen v. Nelnet, Inc.*, Case No. 06-cv-00586-REB-PAC, 2007 WL 2786432, at *8 -9 (D. Colo. Sept. 24, 2007). The Supreme Court has made it clear that the FDCPA applies to attorneys "regularly" engaging in debt collection activity, including such activity in the nature of litigation. *Heintz v. Jenkins*, 514 U.S. 291, 299 (1995). The FDCPA

---

[9] None of theses enumerated exceptions are alleged to be applicable in this case.

establishes two alternative predicates for "debt collector" status – engaging in such activity as the "principal purpose" of an entity's business and/or "regularly" engaging in such collection activity. 15 U.S.C. § 1692a(6). It is clear from the evidence that debt collection is not Defendant Gelman's or his law firm's principal purpose, nor is debt collection the principal purpose of non-defendant CBR. *Goldstein*, 374 F.3d at 60 -61. Therefore the court must examine the issue from the regularity perspective. The *Goldstein* court directed

> Most important in the analysis is the assessment of facts closely relating to ordinary concepts of regularity, including (1) the absolute number of debt collection communications issued, and/or collection-related litigation matters pursued, over the relevant period(s), (2) the frequency of such communications and/or litigation activity, including whether any patterns of such activity are discernable, (3) whether the entity has personnel specifically assigned to work on debt collection activity, (4) whether the entity has systems or contractors in place to facilitate such activity, and (5) whether the activity is undertaken in connection with ongoing client relationships with entities that have retained the lawyer or firm to assist in the collection of outstanding consumer debt obligations. Facts relating to the role debt collection work plays in the practice as a whole should also be considered to the extent they bear on the question of regularity of debt collection activity . . . . Whether the law practice seeks debt collection business by marketing itself as having debt collection expertise may also be an indicator of the regularity of collection as a part of the practice.

*Id.* at 62-63.

### 1. *Defendant Gelman's Practice of Law at Mountain Law Group*

The testimony of Mr. Gelman provided through his affidavit is considered by the court to be unrefuted since Plaintiffs failed to avail themselves of any discovery which might have provided grounds for contest.

After recounting his background as an environmental lawyer for the Department of Justice, Mr. Gelman describes his practice of law with the Mountain Law Group as an attorney

and through the Colorado Office of Dispute Resolution as a mediator. (Gelman Aff. ¶¶ 1, 3.) Mr. Gelman also acts as the manager of his wife's medical practice. (*Id.* ¶ 5.) Because of his responsibilities as a mediator and an administrator, Mr. Gelman only spends approximately 25% of his working time engaged in the practice of law through Mountain Law Group. (*Id.* ¶ 8.) If one considers a normal business day to be nine hours, Mr. Gelman then spends approximately 2.25 hours a day practicing law at the Mountain Law Group. Of that time at the law firm, Mr. Gelman devotes approximately 30% to "Business/Contracts," the only area of his practice which generates any debt collection activity. (*Id.* ¶¶ 8, 22.) Extrapolating, then, Mr. Gelman spends approximately .67 of an hour, or approximately 45 minutes, out of each day pursuing business matters of all kinds for his clients.

One of Mr. Gelman's business clients is CBR to which he provides legal assistance "with all of CBR's corporate needs . . . [including] a) contract drafting and consultation on rental agreements, waivers, and other forms; and b) representation concerning regulatory and enforcement matters between the U.S. Forest Service and CBR." (*Id.* ¶ 19.) Of all the clients of the Mountain Law Group's seven lawyers, CBR is the only one who generates any debt collection work at all. (*Id.* ¶¶ 7, 22, 23.) Additionally, of the seven lawyers, Mr. Gelman, through his client CBR, is the only lawyer to have ever worked on, in any capacity, any debt collection matter.[10] (*Id.*)

---

[10] As noted in the Hightower Affidavit, it is not disputed that, as part of CBR's employment of Mr. Gelman as their corporate attorney, they requested that he attempt to collect the Henne's debt.. (*Id.* ¶ 2.)

Over a forty (40) month period, Mr. Gelman states that he sent only 18 demand letters on behalf of CBR to renters of snowmobiles who did not pay for damages they caused to CBR's equipment. (*Id.* ¶ 20.) This averages out to one demand letter every 2.5 months.[11]

In connection with Mr. Gelman's practice of law with the Mountain Law Group, the court reviewed what is purportedly the law firm's internet home page. (Mot., Ex. F.) This submission contains no date or retrieval or publication. Therefore, the court can give it little weight. However, as part of the analysis, the court notes that at the time of the internet display – whenever that was – the Mountain Law Group's home page did not include any advertisement suggesting they provided debt collection services or as had any expertise in the collection of debt.

Mr. Gelman otherwise states that the Mountain Law Group neither owns nor uses any specialized computer software designed to facilitate debt collection activity. (Gelman Aff. ¶ 12.) Further, his unrefuted testimony is that the firm employs no paralegal or other staff to assist in debt collection for the firm. (*Id.* ¶ 5.)

Plaintiffs, however, assert that Mr. Gelman regularly and frequently pursues debt collection matters on behalf of CBR, pointing the court's attention to a document entitled "Colorado Court Database" ("CCD"). The CCD <u>may</u> indicate that CBR or Summit Interests,

---

[11] Of course, this does not mean that the demand letters are actually sent on such a regular basis.

Inc.[12] was involved in seven[13] case filings in 2009 and 2010. (Resp., Ex. 7.) None of the cases contained on the CCD indicate whether or not Defendant Gelman represented the named entity, nor do any of the cases identify the other parties. The CCD is in the form of a table with columnar headings, "Name," "Case," "Filed," "Status," "Party" and "County." Under the column "Party," six of the cases indicate "Money" and one indicates "Breach of Contract"; both of these terms are undefined. The court does not begin to understand how "Breach of Contract" for instance, can be a "party " to a lawsuit. The court is completely unable to ascertain the relevance of this document or what bearing it has on whether or not Mr. Gelman is a debt collector since it does not reference Mr. Gelman or debt collection. The CCD, unintelligible as it stands, is therefore inadmissible and will not be considered for any purpose in the summary judgment proceeding. *See Johnson v. Weld County, Colo.*, 594 F.3d at 1209-10.

### 2. *Mr. Gelman's Debt Collection Methodology*

This case involves essentially two communications from Mr. Gelman: the April 1, 2010 letter to Mr. Henne and the April 13, 2010 email from Mr. Gelman to Mrs. Hightower-Henne following her letter professing to represent Mr. Henne. (Compl. ¶¶ 21-23, 25, re: Demand Letterl and *id.* ¶ 24, re: April 13, 2010 email.)

#### a. *Debt Collector Preface*

---

[12] In the April 1, 2010 demand letter from Mr. Gelman to Mr. Henne, Mr. Gelman professes to represent "Summit Interests, Inc., d/b/a/ Colorado Backcountry Rentals." (Resp, [Doc. No. 23-1].)

[13] The documents references more than ten items, but several have the same case number.

14

In the April 1, 2010 letter, Mr. Gelman represented that "[t]his firm[14] is a debt collector" and in the April 13, 2010 email, under his signature block, was the notation, "This is from a debt collector . . ." The court notes that the warning on the bottom of the April 13, 2010 email does not appear to be part of the normal signature block of Mr. Gelman, because it does not appear on the short transmission at the beginning of the email string wherein Mr. Gelman advised "Tracy," that he just left her a voice mail as well. (Resp. at Doc. No. 23-4.) This email warning, therefore, appears to have been specifically typed in for inclusion in the lengthy portion of the email.

Mr. Gelman states he has mediated a large number of debt collection disputes and is therefore "relatively familiar with the collection industry." (Gelman Aff. ¶ 11.) While the court considers the language used by Mr. Gelman – commonly referred to as a "mini-Miranda" or the "debt collector preface" – as "some" evidence to be considered in the debt collector determination, it is not particularly persuasive standing alone. First, setting forth such a debt collector preface does not create any kind of equitable estoppel. Equitable estoppel requires a showing of a misleading representation on which the opposing party justifiably relied which would result in material harm if the actor is later permitted to assert a claim inconsistent with the prior representation. Plaintiffs have offered no evidence to support a claim that they detrimentally relied upon the debt collector preface. *See In re Pullen*, 451 B.R. 206, 210 (Bkrtcy. N. D. Ga. 2011).

---

[14] The letterhead on the communication is "Mountain Law Group." Mountain Law Group is not a defendant in this action.

When attempting to collect a debt, the court applauds a practice whereby the sender recognizes itself as a debt collector in a mini-Miranda warning regardless of any legal requirement and considers such an advisement prudent and in the spirit of the FDCPA. This course of action would be expected of an attorney such as Mr. Gelman who frequently is in a position to mediate debt collection disputes. However, calling oneself a rose, does not necessarily arouse the same olfactory response as would a true rose.

### b. *Use of Form Letters*

Plaintiffs argue that Mr. Gelman communicates as a debt collector through the use of form letters. For this proposition, they attach Exhibit 8, three letters apparently authored by Mr. Gelman when he was associated with the law firm of Dunn Keyes Gelman & Pummell, LLC. Each of the three letters appear to be what is commonly known as a demand letter – an attempt to collect money from persons who allegedly owed CBR as a result of damage done to a snowmobile. Each letter begins with a one line salutation introducing the lawyer as representing Colorado Backcountry Rentals, Inc. Thereafter, each letter proceeds for several paragraphs to outline specific and unique facts concerning the alleged debtor's obligation for damages to CBR. (*Id.*) Each letter then contains a paragraph, in bold typeface, stating that the debtor can submit a sum certain in settlement of the matter in bold typeface. Each of the three letters contain a summary paragraph at the end which states the letter is a settlement offer and that court proceedings may be instituted if payment is not made. This general format is consistent with the April 1, 2010 demand letter sent to Mr. Henne. Two of the letters in Exhibit 8 contain the debt collector preface at both the beginning and end of the letter; one of the letters contains the legend

only at the beginning, similar to the format of the April 1, 2010 demand letter sent to Mr. Henne by Mr. Gelman.

The court finds that these letters are not "form" collection letters such as those which would be utilized by a business engaged primarily in the business of debt collection. Although there is some boilerplate language common to all, each letter is personally authored and the main body of the text is a unique recitation of the facts and circumstances peculiar to that case. These three letters, viewed against the April 1, 2010 letter Mr. Gelman sent to Mr. Henne, are similar only in the boilerplate language at the beginning and end of the letter and do not persuade the court that they are form letters indicating that Mr. Gelman is in the regular business of collecting debts.

### c.     *Pattern of Litigation Activity*

Mrs. Hightower-Henne states, without any evidentiary foundation, that Defendant has filed "several suits for collections for CBR" which indicate "a pattern of escalating fees for nominal claims." (Hightower Affidavit ¶ 4.) She does not further describe or attach any of the cases to which she refers, although one might assume they may be among those cases sketchily mentioned in rejected Exhibit 7 to the Plaintiffs' Response. Mrs. Hightower-Henne blithely asserts that she has spoken to several persons who were "parties in these suits" but does not state what significance anything they may have told her was, or for that matter, what they even said. (*Id.*) Although the court will recognize this testimony as admissible, it is wholly unpersuasive as to the issue to which it is apparently directed.

### *d.     Summary*

Considering the undisputed testimony of Mr. Gelman and Mrs. Hightower-Henne together with the admissible documentary evidence submitted by the parties, this court finds that there are no material facts in dispute relevant to the determination of whether Mr. Gelman is a debt collector as defined in the FDCPA.   For all the reasons set forth above, the court finds that Mr. Gelman is not a debt collector pursuant to the FDCPA and therefore, summary judgment in his favor is appropriate.

Given that the determination that Mr. Gelman is not a debt collector is dispositive of the case, the court declines to address further Mrs. Hightower-Henne's standing to sue or whether any of the actions undertaken by Mr. Gelman would have violated the FDCPA had he been found to be a debt collector under the Act.

Wherefore, it is **ORDERED**

1.     Defendant Leonard M. Gelman's Motion for Summary Judgment [Doc. No. 17] is **GRANTED** and this case is dismissed with prejudice.  Defendant may have his cost by filing a bill of costs pursuant to D.C.COLO.LCivR 54.1 and the Clerk of Court shall enter final judgment in favor of Defendant Gelman in accordance with this Order.

2.     Plaintiffs' "Motion to File Sur-Reply," [Doc. No. 26] is **DENIED**.

3.      The Final Pretrial Conference set for January 19, 2012 at 10:45 a.m. is

**VACATED**.

Dated this 12th day of January, 2012.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge